ELLIS, Judge.
Plaintiff filed this suit in which he prays for workmen’s compensation benefits at the rate of $32.50 per week for a period not to exceed 400 weeks, or for any lesser amount which it might be judicially determined he is entitled to receive, and for $2500.00 as medical benefits, together with legal interest and costs, as the result of an alleged accident on the 2nd day of March, 1961 during the course and scope of his employment with the defendant as a roofer. Plaintiff alleged that while on the roof of a dwelling he was attempting to pull an A-frame onto the roof and over-exerted himself to such an extent that he suffered a sharp pain in his groin and back which resulted in “a serious aggravation of his preexisting hernia and also suffered serious back injuries.” Plaintiff was paid compensation at the rate of $35.00 per week for eleven weeks or until May 20, 1961.
The case was duly tried and the District Judge awarded plaintiff “twelve additional weeks compensation at the rate of $35.00 per week, first payment to be made for May 27, 1961, with interest at the legal rate of 5% on each installment until paid, plus *301 •costs of these proceedings.”[1] From this judgment the plaintiff has appealed.
Plaintiff was 63 years of age, slightly ibuilt, and had been employed with the defendant company for approximately twenty-•one years. He had suffered a hernia some three or four years after beginning work with them, or seventeen to eighteen years prior to the date of the accident, but had made no claim against the company for such ■condition. He had been required ever since to wear a truss and until the date of the accident had satisfactorily carried out his duties and had been a faithful employee of the ■defendants.
On the day of the accident plaintiff was ■sitting astride the ridge row on top of the roof and was pulling an A-frame weighing from seven to twelve pounds to the roof with a rope which was to be used in hoisting the roofing material from the ground. 'When he had “got it up and turned around ■pulling it up on the roof, I felt something stretching in my back, a little pain like, but I continued and drug it on up, and drug it on over to the flat roof.” He continued to work that day and stated he had a little trouble with his back but it did not amount to much. He worked the next day, although his back was still bothering him, and he told Comenge, “I believe I hurt my back ■down there yesterday. * * * I got a backache,” whereupon Comenge asked him if he thought he could make the day and he replied, “yes, I was going to try.” Plaintiff also worked Saturday until noon. He ■did not go back to work the following Mon■day for he testified he could hardly get up ■and when he went in the kitchen to make ■coffee he could hardly walk and was leaning over on the table when his wife came in and asked him what was the matter, and he replied: “I told her my back was killing ■me. So she helped me back to the bed, and I got in bed and stayed.”
Plaintiff went to see his attorney a week after he was hurt and was advised to see his family doctor, Dr. H. E. Gautreaux. He called on Dr. Gautreaux who in turn called up the defendant company and got instructions from them to send plaintiff to a hospital for an x-ray, which he did, and this doctor told plaintiff of return to his office. Plaintiff testified Dr. Gautreaux told him he had no bone injury, “ * * * just sprained muscles.” Plaintiff testified in the affirmative when asked if anything else was hurting him besides his back at the time he went to see Dr. Gautreaux. However, Dr. Gautreaux flatly contradicts this testimony and testified plaintiff never complained about anything but the pain in his back and he did not even know plaintiff had a hernia.
It is conceded plaintiff suffered an accident and a back injury and the lower court so found, but plaintiff mainly contends he also suffered an aggravation of the preexisting hernia which has totally disabled him. Therefore, the only question is whether plaintiff has proven an aggravation of the pre-existing hernia and total disability-In addition to plaintiff’s testimony that the hernia was affected by the accident, he contends the truss will no longer keep the hernia in place, and therefore the opening must have become enlarged as a result of the accident.
Dr. Gautreaux, a general practitioner in Covington, treated plaintiff from the 10th of March to the 8th of April, 1961, and thereafter, according to the doctor, “he disappeared.” Dr. Gautreaux testified plaintiff had never complained about the hernia but only about the pain in his back. He found plaintiff had a rather severe lumbo-sacral strain and his flexion and anti-flexion and natural motion were very much impaired. The doctor additionally found some arthritis in his back which, he stated, could *302 be activated by trauma. Plaintiff was given diathermic treatments -and the doctor felt he was getting along well until he suddenly ceased his visits. Plaintiff stated he did not return because he understood the doctor had discharged him. On May 2nd plaintiff did return to Dr. Gautreaux who took the matter up with the insurance company . and informed it plaintiff needed further treatment, and the doctor never heard from plaintiff afterward. This doctor frankly stated an individual with a hernia, sustaining a severe strain, could aggravate the condition, but he definitely thought the individual would have pain in that particular region and plaintiff did not have pain there or never complained to him of any pain. He explained in his testimony that if the hernia comes through the external ring because the latter is stretched or dilated, the individual will have acute pain. In answer to questions by the Court Dr. Gautreaux anticipated the plaintiff would have needed approximately six weeks more treatment after April 8th, 1961. The District Judge awarded twice this number of weeks in his judgment.
Counsel, on cross examination of plaintiff, referred to a discovery deposition taken on July 21st, 1961 with the plaintiff as a witness in which the latter clearly admitted, and so answered, that Dr. Gautreaux had treated him only for the injury to his back and he had only complained of his back. He was asked the following questions and gave the following answers:
"Q. And then the question, ‘Did you complain to him about anything else besides your back?’ Answer, ‘No. I didn’t tell him anything about this hernia because I didn’t know. It wasn’t bothering me at that time that my back was hurting me so, and all this whole hip here was hurting me right in there.’ Is that your answer?
“A. That’s right.
“Q. That’s correct.
“A. Yes, sir.
“Q. And that’s the true answer, is that right ?
“A. Yes, sir.”
On April 10th, 1961 plaintiff’s attorney sent him to Dr. William Fisher of New Orleans, Louisiana. On this occasion plaintiff complained of a dull, aching pain located in the lower back and to a lesser degree in the right hip, and also referred to pain in the right inguinal region. Dr. Fisher’s opinion, shown by his report which has been introduced in evidence, on the basis of the history, physical examination and x-rays of plaintiff, was that the latter had what appeared to be a sprain of the lower back in the sacroiliac region and also increased symptoms in relation to a pre-exist-ing right indirect inguinal hernia. It also revealed the plaintiff was underweight, had hypertrophic arthritis in the vertebrae of the lower back and a pelvic tilt with compensatory scoliosis. The marked rotary scoliosis of the mid-lumbar spine to the right represented the effect of muscle spasm. Dr. Fisher recommended plaintiff have a surgical repair of the right inguinal hernia, correction of the pelvic tilt by wearing an elevated right shoe, and medication for the hypertrophic arthritis, together with physiotherapy for the sprain of the lower back. In his testimony Dr. Fisher opined, from talking to the plaintiff and examining the hernia, that the truss which formerly was taking care of this hernia satisfactorily was no longer doing the same job and plaintiff should have surgery for reduction of the hernia, or, in lieu of surgery, he should have a refitting for a truss which would hold this hernia in place. Dr. Fisher believed either the strain which plaintiff described he suffered on March 2nd had affected this hernia or the hernia was “very likely made worse or aggravated by this accident.” Dr. Fisher also testified that when he saw plaintiff on April 10th, 1961, *303 “I thought he wasn’t able to do the work that he was doing before.”
Dr. Richard A. Faust of New Orleans, La. testified on behalf of the defendant. He saw plaintiff on May 18th, 1961 and July 5, 1961. On May 18th he examined plaintiff “strictly for low back pain. That was the only complaint.” He found the scoliosis, which is a curvature of the spine caused by one leg being shorter. .As a result of the examination on this date, Dr. Faust stated he found no evidence of any residuals of the straining injury which plaintiff had sustained on March 2nd, 1961, and felt plaintiff was as capable of doing the same type work as he had been performing prior to the time of the injury. Dr. Faust stated plaintiff did not complain of any pain re-ferrable to a hernia and he did not question him with regard to it.
On the second examination made on July 5, 1961 as a result of a call in which the doctor was informed plaintiff was complaining of a hernia, and since he had not examined him for this condition he was requested to see plaintiff again and check him specifically for the hernia. Dr. Faust stated plaintiff told him on this occasion he had simply forgotten to tell him of the injury to the right inguinal region and had no pain in the groin at the time of the strain to his back; that he had been wearing a truss at the time of the injury and had noted no change in the hernia nor in the wearing of the truss until about one week following the strain of the back and at that time it hurt him more to wear the truss. Dr. Faust, as a result of this examination, found the plaintiff had an obvious, visible small hernia in the right groin measuring a little over an inch in diameter which did not decsend into the scrotum. “It was not a complete hernia, in other words. It was easily reducible with the patient standing up. There was no tenderness associated with my feeling or palpating or reducing the hernia. It could be made to bulge, after it had been reduced back into the abdominal cavity by having him strain or cough. He had no hernia on the opposite side.” Dr. Faust was definitely of the opinion the strain which plaintiff suffered on March 2, 1961 did not have anything to do with the hernia and gave as a reason that it would have caused difficulty immediately. If there had been a sudden aggravation or change in the status of the hernia it would have been made evident by a “sudden stretch or strain or tearing, and he will know it at the time of the strain.”
Dr. Faust, based upon the history given him by plaintiff, stated plaintiff had not even suffered a “significant strain of the back. It was no more, apparently, than the strains that anybody would go through with the normal act of living, in straining to stoop or picking up a chair, or doing other strains of living.” He was of the opinion if plaintiff were given a properly fitted truss he would be in the same condition as before the accident.
In addition to the medical testimony, plaintiff offered lay witnesses. His sister testified she had noticed a change in plaintiff after the accident in that he had no energy and was not able to do anything. She was specifically asked by counsel for plaintiff if the latter complained about anything bothering him, that is, physically, and her answer was, “his back.”
Plaintiff’s wife testified she had been married to him for thirteen years; that he had an accident in March and prior to that time had missed very little time from work and was always doing something around the place when he was home, but she stated after the accident, “Well, he didn’t do noth-thing around the house. He just lay around and tell, tell me that his back would be hurt-in, (sic) and I’d * * * I’d rub it and I’d fix some hot water, you know, let him bathe in that, * * * She also testified her husband still complained with the pain in his back. She did not mention the hernia until she was asked a leading question and answered to the effect that before the accident he had not complained of the hernia but afterwards he had told her the hernia *304 was worrying him and he “couldn’t wear his trussle (sic).”
Plaintiff also offered the testimony of Rev. Dokes, a Baptist minister who lived within the vicinity and who testified plaintiff had been a good worker before the accident but had not done anything since.
Rather than plaintiff proving by a preponderance of the testimony, which he must do in order to recover, that he has suffered an aggravation of the pre-existing hernia which rendered him totally and permanently disabled, the testimony preponderates to the contrary, that he suffered no aggravation to the pre-existing hernia and therefore was not totally and permanently disabled thereby, nor was he totally and permanently disabled as the result of the back strain. Dr. Gautreaux was of the opinion he would have recovered within six weeks from his last examination on April 8th, 1961, whereas Dr. Faust was of the definite opinion he had fully recovered on the date of his first examination, May 18, 1961, from any back strain. Dr. Fisher was of the opinion plaintiff was disabled as of April 10,, 1961, but made no prognostication as to the future duration of disability.
The District Judge was evidently of the opinion plaintiff had not proven any aggravation of the pre-existing hernia nor was he permanently and totally disabled, but in the abundance of precaution accepted the testimony of Dr. Gautreaux that he was still suffering some from the back injury on April 8, 1961. He did not accept Dr. Gaut-reaux’ estimate of recovery in six weeks, but awarded plaintiff compensation for twelve additional weeks beginning May 27, 1961.
Based upon the record, we agree with the District Judge that plaintiff has failed to prove as required by law he was totally and permanently disabled. Although the only positive testimony as to the duration of plaintiff’s disability as a result of his back strain was given by Dr. Gautreaux as being an additional six weeks from April 8, 1961, and the Court awarded twelve additional weeks beginning May 27, 1961, the judgment must stand, as defendants neither appealed nor filed an answer to the appeal. Accordingly, the judgment is affirmed.
Affirmed.

. Although plaintiff alleged and prayed for payment at the rate of $32.50 per week, the record shows 'without objection that he was paid $9.60 per day or $1.20 per hour and it is stipulated this was correct. Therefore there is no question but that if plaintiff is entitled to compensation it would be at the rate of $35.00 per week.